UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY BENITEZ,<br><br>      Plaintiff,<br><br>  v.<br><br>JMC RECYCLING SYSTEMS, LTD.,<br>STRIP TECHNOLOGY, INC., DR.<br>COPPER, LLC, J. DOE (A through<br>Z) and R. ROE (A through Z),<br><br>      Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 13-2737<br>     (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

WILENTZ GOLDMAN & SPITZER P.A.
By:  Barry A. Cooke, Esq.
Meridian Center I
Two Industrial Way West
Eatontown, NJ 07724
    Counsel for Plaintiff

CLAUSEN MILLER P.C.
By:  Ruth V. Simon, Esq.
100 Campus Drive, Suite 112
Florham Park, NJ 07932
    Counsel for Defendant JMC Recycling Systems, Ltd.


**IRENAS**, Senior District Judge:

    Plaintiff Anthony Benitez brought this products liability action against Defendants JMC Recycling Systems, Ltd. ("JMC"), Strip Technology, Inc., and Dr. Copper, LLC to recover for

injuries allegedly sustained while operating a metal recycling shear in a recycling facility in Pennsauken, New Jersey.

Pending before the Court is Defendant JMC's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  For the reasons stated herein, JMC's motion will be **GRANTED**.

## I.  Background

Plaintiff Benitez was employee of Dr. Copper LLC, a New Jersey Corporation, and worked at Dr. Copper's recycling processing facility located at 2250 Sherman Avenue, Pennsauken, New Jersey.  (Compl. at 2)  According to the Complaint, on May 5, 2011, during the course of his employment, Plaintiff sustained severe and permanent injuries while operating a metal recycling shear.  Plaintiff then brought the present lawsuit against Dr. Copper, and included claims against JMC, the alleged manufacturer and distributer of the metal recycling shear, and Strip Technology, the alleged distributor and retail seller of JMC recycling equipment.[1]  (Compl. at 3-8)

---

[1] Plaintiff's claims against JMC and Strip Technology, described as counts for products liability, consumer fraud, and negligence, are, in effect, claims under the New Jersey Products Liability Act, which subsumes "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J.S.A. 2A:58C-1.

JMC is a foreign corporation with its principal place of business in Nottingham, England. (Compl. at 2) Along with its motion to dismiss, JMC submitted a Declaration from its Director Sally Johnson providing further detail about the entity. (Johnson Decl. I) According to Ms. Johnson, JMC is a private limited company organized under the laws of the United Kingdom. (Id. ¶ 2) Ms. Johnson states that JMC has neither assets, offices, nor employees in New Jersey, and conducts no business in New Jersey. (Id. ¶ 4) JMC pays no taxes in New Jersey. (Id. ¶ 5) The company's Board of Directors has never conducted a meeting in New Jersey. (Id. ¶ 7) While JMC employees have travelled to the United States to attend trade shows, Ms. Johnson does not recall JMC employees ever having attended a trade show in New Jersey, and she claims that JMC employees have not travelled to New Jersey to conduct business of any kind for JMC. (Id. ¶ 8)

In 2003, JMC entered into an agreement with Strip Technology by which Strip Technology would be the sole distributor of JMC's products in the United States. (Id. ¶¶ 12-13) Strip Technology is also a foreign corporation located in Fort Worth, Texas. (Compl. at 2) Ms. Johnson states that JMC transferred title on all products, including the metal recycling shear at issue, to Strip Technology by contract in the United Kingdom prior to shipment to the United States. (Id. ¶¶ 13-14)

Payment for the products JMC sold to Strip Technology also took place in England. (Id. ¶ 15)  JMC has never controlled or owned any interest in Strip Technology. (Id. ¶ 11)  The distribution relationship between JMC and Strip Technology has since ended. (Id. ¶ 15)

With regards to the relevant recycling shear, Ms. Johnson states that, if the allegedly defective product was manufactured by JMC, Strip Technology was the party that marketed, distributed, and sold the product. (Id. ¶ 10)  JMC never shipped products to or marketed its products in New Jersey, and made no decisions as to where Strip Technology would sell the products after title transferred in England. (Id. ¶¶ 16, 18, 20)  JMC provides no services to end users in New Jersey who purchase the products from Strip Technology, and no consumers can order new replacement parts directly from JMC. (Id. ¶ 21)

Plaintiff filed his Complaint against all Defendants on April 23, 2013.  Dr. Copper answered and filed cross-claims against JMC and Strip Technology.  JMC filed its Answer on October 9, 2014, and instituted cross-claims against all other Defendants. (Docket. No. 24)  On October 31, 2014, Strip Technology answered and filed cross-claims against Dr. Copper and JMC. (Docket No. 28)

Since commencing the lawsuit, Plaintiff has settled with and voluntarily dismissed its claims against Dr. Copper.

(Stipulation and Order of Dismissal as to Defendant Dr. Copper, Docket No. 10)  Strip Technology has also voluntarily dismissed its cross-claim against Dr. Copper without prejudice.[2]  (Order Granting Notice of Voluntary Dismissal, Docket No. 34)

On November 13, 2014, JMC filed the instant motion to dismiss Plaintiff's Complaint and any cross-claims for lack of personal jurisdiction, a defense JMC first raised in its Answer.[3]  In lieu of a formal opposition brief, Plaintiff filed a letter requesting that the Court deny JMC's motion pending "discovery of the defendant JMC Recycling Systems, Ltd. as to any nexus with the State of New Jersey."  (Pl.'s Ltr., Docket No. 30)  Without making any specific factual allegations, Plaintiff seeks (1) invoices for products sold directly to customers in New Jersey, (2) bills of lading for shipments of products and/or parts to end users located in New Jersey, (3) copies of distribution agreements, including JMC's distribution agreement

---

[2] Remaining in this litigation are (1) Plaintiff's claims against JMC and Strip Technology, (2) Dr. Copper's and Strip Technology's cross-claims against JMC, and (3) JMC's cross-claims against Dr. Copper and Strip Technology.

[3] Although Plaintiff fails to raise the issue, the Court notes that JMC filed the instant motion to dismiss after answering the Complaint, despite the requirement that motions pursuant to Rule 12(b) be made "before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  However, courts in the Third Circuit have generally been unwilling to deny such motions as untimely when a defendant included the same grounds as an affirmative defense in its answer.  *See Law v. Schonbraun McCann Grp., LLC*, No. 08-2982 (WJM), 2009 WL 3380321, at *1 n. 1 (D.N.J. Oct. 19, 2009); *Molnlycke Health Care AB v. Dumez Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 449 n. 1 (E.D. Pa. 1999).  In line with these prior opinions, and since JMC included lack personal jurisdiction as a defense in its answer, the Court will hear JMC's motion.

with Strip Technology, and (4) copies of documents related to the dissolution of J. McIntyre Machinery Ltd.[4]  (Id.)

In a second Declaration attached to JMC's reply, Ms. Johnson states that there are no invoices or bills of lading for products sold or shipped to customers in New Jersey because JMC never shipped products for delivery to Strip Technology or anyone else in New Jersey.  (Johnson Decl. II ¶ 4)  She also claims that there are no copies of distribution agreements with Strip Technology because "[t]he machines were simply sold to them for resale using the standard terms of sale in the United Kingdom."  (Id. ¶ 5)  However, Ms. Johnson states that after JMC's relationship with Strip Technology ended, JMC entered into an exclusive United States distribution agreement with another entity, Ohio Baler Company ("Ohio Baler").  (Id.)  Ms. Johnson attaches a copy of the distribution agreement with Ohio Baler to her Declaration.  (Ohio Baler Distribution Agreement, Ex. A to Johnson Decl. II)

Finally, Ms. Johnson attempts to clarify the relationship between JMC and J. McIntyre Machinery Ltd. ("McIntyre").  She states that JMC was not "formerly known" as McIntyre, as she originally claimed in her first Declaration, but that JMC "manufactures products formerly made by" McIntyre.  (Johnson

---

[4] In her Declaration attached to JMC's motion, Ms. Johnson states that JMC was "formerly known as J. McIntyre Machinery Ltd."  (Johnson Decl. I ¶ 1)

Decl. II ¶ 2)  JMC was formed separately and the two companies ran alongside each other until McIntyre went into administration.  (Id.)  In response to Plaintiff's discovery request, Ms. Johnson attaches certain documents regarding the liquidation of McIntyre.  (McIntyre Liquidation Papers, Ex. B to Johnson Decl. II)  Nothing in the liquidation documents reference JMC, Strip Technology, or the State of New Jersey.

## II. Legal Standard

The burden of presenting evidence establishing a *prima facie* case of personal jurisdiction over each defendant falls on the plaintiff.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  To sustain her burden, a plaintiff must establish jurisdictional facts "'through sworn affidavits and competent evidence . . . . At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.'"  *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) (quoting *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603-04 (3d Cir. 1990)).  In the absence of an evidentiary hearing, only a *prima facie* showing is required and plaintiff is "entitled to have its allegations taken as true and all factual disputes drawn in its

favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F. 3d 93, 94 (3d Cir. 2004).

The framework for analyzing jurisdiction over the parties is well known. A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. *See* Fed. R. Civ. P. 4(e). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96.

Due process requires that each defendant have "minimum contacts" with the forum state (in this case New Jersey) and that the Court's exercise of jurisdiction over the parties comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). "Minimum contacts must have a basis in 'some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.'" *Asahi Metal Indust. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475.

Within this framework, courts examine personal jurisdiction under two distinct theories: general and specific jurisdiction. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). "General jurisdiction is based upon the defendant's continuous

and systematic contacts with the forum and exists even if the plaintiff's cause of action arises from defendant's non-forum related activities." *Id.* (citations omitted). The Third Circuit "requires a very high showing before a court may exercise general jurisdiction." *Snyder v. Dolphin Entertainers Ltd.*, 235 F. Supp. 2d 433, 437 (E.D. Pa. 2002) (citing *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)). Plaintiffs must show "significantly more than minimum contacts to establish general jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.3d 434, 437 (3d Cir. 1987). In the context of foreign corporations, the Supreme Court has stated that contacts with a forum state are "continuous and systematic" where the defendant is "essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).

To establish specific jurisdiction, a plaintiff must demonstrate that "a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citing *Rudzewicz*, 471 U.S. at 472). There are three steps to the specific jurisdiction inquiry: (1) the defendant must have purposefully directed its activities at the forum; (2) the litigation must "arise out of or relate to" at least one of

9

those activities; and (3) if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with 'fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).

### III.  Personal Jurisdiction Analysis

Plaintiff has not presented sufficient facts to make a *prima facie* case for either general or specific jurisdiction. In making this finding, the Court considers the pleadings along with the Declarations and supporting evidence JMC submitted with its motion to dismiss.  *See* 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1351 (3d ed.) ("The court may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts.").

#### 1. General Jurisdiction

The Court lacks general jurisdiction over JMC because the pleadings and supporting evidence clearly show that JMC does not have "continuous and systematic" contacts with New Jersey.

As Plaintiff concedes in its Complaint, JMC has "no known agents, facility or other personnel in the United States," least of all in the state of New Jersey.  JMC does not pay taxes, advertise its products, or conduct meetings in New Jersey.  JMC

has never sent its employees to New Jersey to conduct business of any kind. Simply put, there is no basis for concluding, and Plaintiff has not alleged any facts suggesting that JMC is "essentially at home" in New Jersey. Therefore, the Court holds that it cannot assert general personal jurisdiction over JMC.

### 2. Specific Jurisdiction

Neither has Plaintiff established a *prima facie* case for specific personal jurisdiction.

This case turns on the first requirement of the specific jurisdiction analysis – that a nonresident defendant must purposefully direct its activities at the forum state. Plaintiff's pleading posits the "stream of commerce" theory as the basis for personal jurisdiction over JMC. Specifically, Plaintiff states that JMC "sold, distributed and/or otherwise placed in the stream of commerce the subject Shear Equipment." (Compl. at 3) The Supreme Court recognized the stream of commerce theory in *Asahi Metal Indus. Co. Ltd. v. Super. Ct. of Cal.*, where a four-justice plurality held that personal jurisdiction over a defendant would be proper in a particular forum if that defendant foresaw and expected that its goods would be sold as part of a final product to consumers of that forum. 480 U.S. at 117.

In *J. McIntyre Machinery, Ltd. v. Nicastro*, the Supreme Court attempted to clarify the scope of the "stream of commerce"

theory. 131 S. Ct. 2780 (2011). Note that *Nicastro* and the instant case are virtually identical in nature due the relationship between JMC and J. McIntyre Machinery, the defendant/petitioner in *Nicastro*. At some point prior to Plaintiff's incident, JMC took over the manufacturing of McIntyre's metal recycling equipment. (Johnson Decl. II at ¶¶ 1-2) As the Court understand it, the two entities are not one in the same – McIntyre continued to exist alongside JMC until McIntyre dissolved in 2013 – but McIntyre split off a particular manufacturing business segment that became JMC.

Like Plaintiff in this case, the *Nicastro* plaintiff filed a products liability suit against McIntyre, also based in Nottingham, England, after allegedly suffering injuries while operating a metal-shearing machine for his employer in New Jersey. *Id.* at 2786. The machinery reached plaintiff's employer through a third-party that acted as McIntyre's distributor in the United States.[5] *Id.* McIntyre did not sell its goods directly to consumers in the U.S., did not have an office in New Jersey, and never sent any employees to New Jersey. *Id.* at 2790. The only apparent contact between McIntyre and New Jersey was the fact that the machine in question ended up in the state. *Id.*

---

[5] McIntyre's U.S. distributor was not Strip Technology, the distributor JMC used during the relevant time period in this case.

The New Jersey Supreme Court had held that a New Jersey court could exercise personal jurisdiction over McIntyre because the injury occurred in New Jersey, and McIntyre intended to serve the United States market, expected its machines to be sold in New Jersey, and took no steps to prevent distribution of its products in New Jersey. *Id*. at 2786. In a plurality opinion, the Supreme Court reversed, holding that a foreign corporation's mere expectation that its goods would be sold to consumers of some forum would not be sufficient to establish personal jurisdiction in that forum. *Id.* at 2789. The plurality found that a defendant's conduct must manifest an intention to submit to the laws of the particular forum at issue. *Id*. at 2787. Personal jurisdiction requires a "forum-by-forum, or sovereign-by-sovereign, analysis," and, when a foreign corporation directs its goods towards the United States, a distinct sovereign, that entity may "in principle be subject to the jurisdiction of the courts of the United States but not of any particular State." *Id*. at 2789. Since McIntyre did not engage in conduct purposefully directed at New Jersey, the Court found no basis for personal jurisdiction there.

Although the plurality opinion in *Nicastro* "does not clearly or conclusively define the breadth and scope of the stream of commerce theory, . . . . there is no doubt that *Nicastro* stands for the proposition that targeting the national

13

market is *not* enough to impute jurisdiction to all the forum states." *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 513 (D.N.J. 2011). As in *Nicastro*, the facts here reveal only JMC's intent to serve the U.S. market; there were no marketing or sales efforts directed at the State of New Jersey. Plaintiff alleges that Strip Technology, not JMC, sold the relevant machinery directly to Plaintiff's employer. Strip Technology, whose distribution relationship with JMC has apparently concluded, was not a subsidiary of JMC and the two entities shared no commonality of ownership or management. Further, Plaintiff does not allege that JMC directed Strip Technology to serve the New Jersey market in particular.[6]

Even assuming that Plaintiff suffered injuries while operating a defective JMC recycling shear, Plaintiff alleges no facts that JMC engaged in activities in New Jersey or otherwise purposefully availed itself of the New Jersey market in particular. The Court therefore holds that Plaintiff has not made out a *prima facie* case for specific jurisdiction.

---

[6] Although JMC Director Sally Johnson claims that there is no written distribution agreement between JMC and Strip Technology, the agreement between JMC and its new distributor, Ohio Baler, demonstrates that when JMC enters into distribution relationships, it does so for North America in general with no more specific direction. (Ohio Baler Distribution Agreement at ¶ 1.6)

**IV.   Jurisdictional Discovery**

The Court will not grant Plaintiff's letter request to deny JMC's motion pending the completion of jurisdictional discovery.

As a general rule, jurisdictional discovery should be allowed unless the plaintiff's claim is "clearly frivolous." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997).  If a plaintiff presents factual allegations that "suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained."  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Here, Plaintiff has failed to meet this required, though admittedly low threshold showing.  Plaintiff's Complaint alleges only that JMC "sold, distributed and/or otherwise placed in the stream of commerce the subject Shear Equipment."  (Compl. at 3)  The Complaint identifies Strip Technology as the party that "sold, distributed and/or otherwise placed in the stream of commerce *to Doctor Copper* the subject Shear Equipment."  (Id. (emphasis added))  Plaintiff does not allege any direct connection between JMC and Dr. Copper or New Jersey.  In fact, Plaintiff concedes that, upon information and belief, JMC "has

no known agents, facility or other personnel in the United States." (Id. at 5) The Complaint does not allege JMC targeted the New Jersey market, sold products directly to customers in New Jersey, or that JMC otherwise has any contact with the State of New Jersey. Following *McIntyre*, which held in the context of a practically identical defendant that merely placing goods in the stream of commerce, even with the expectation that the goods might reach consumers in the forum state, would not establish personal jurisdiction, Plaintiff's claim that the Court has personal jurisdiction over JMC is clearly unsustainable.

    Neither does Plaintiff's letter response to JMC's motion present any factual allegations that suggest with reasonable particularity the possible existence of contacts between JMC and New Jersey so as to support further discovery. Plaintiff makes no factual allegations at all. Instead, Plaintiff asks for "brief and pointed discovery of the defendant JMC . . . as to *any nexus* with the State of New Jersey." (Pl.'s Ltr. (emphasis added)) Plaintiff's specific requests for invoices and bills of lading connecting JMC to New Jersey are not allegations that these documents exist. The Court will not permit Plaintiff to use jurisdictional discovery as a fishing expedition to support an otherwise improper assertion of personal jurisdiction.

Further, to the extent Plaintiff requested "brief and pointed discovery," JMC has responded with specific statements in Ms. Johnson's Declaration, and relevant documents. Plaintiff has not responded to this new information. There is no indication, and Plaintiff has not alleged, that any other responsive documents exist or that further discovery would be worthwhile. Based on Plaintiff's silence, and absence of any factual allegations that would support personal jurisdiction, the Court finds that there is no basis for jurisdictional discovery and therefore will deny Plaintiff's request.

## V.  Remaining Claims and Cross-Claims

Since the Court cannot exercise personal jurisdiction over JMC, Strip Technology's and Dr. Copper's cross-claims against JMC will also be dismissed. In addition, the Court will dismiss JMC's cross-claims against Strip Technology and Dr. Copper, and terminate JMC as a party to the litigation. As a result, only Plaintiff's claims against Strip Technology, as alleged in Counts II, III, IV, V, and VI of Plaintiff's Complaint, will remain in this case.

17

### VI. Conclusion

For the reasons set forth above, the Court will **GRANT** Defendant JMC's motion to dismiss Plaintiff's claims against JMC, along with any cross-claims Defendants Dr. Copper and Strip Technology have instituted against JMC, for lack of personal jurisdiction.  The Court will also dismiss JMC's counter-claims against all other Defendants.  Only Plaintiff's claims against Strip Technology will remain.  An appropriate order accompanies this opinion.


Date: April 10, 2015


                                                s/ Joseph E. Irenas
                                                **Joseph E. Irenas, S.U.S.D.J.**